And if I may, I'd like to reserve two minutes for rebuttal. Yes. Thank you. May I please the court, William Fick for Mr. McIvory. Over a preserved objection, 23-year-old Jason McIvory was sentenced to a 10-year mandatory minimum for distribution of a quantity of crack cocaine higher than what was charged in the indictment, not proven to a jury beyond a reasonable doubt, and not admitted by Mr. McIvory himself. There's no dispute that this was a legal error in light of the Supreme Court's decision in a lien. The only question before this court is whether Mr. McIvory has any remedy for this error. The most straightforward basis for reversal, which does not require delving into the complexities of harmless error in the Heracli case, is to recognize that a constructive amendment of the indictment occurred here. The government does not seriously contest the fact of a constructive amendment. The terms of the indictment were, in effect, altered when a mandatory minimum was imposed based on a higher quantity than that which was charged. And as this court has held repeatedly, a preserved argument is prejudicial and requires reversal. How did you preserve that argument here? Well, so the government contends that it was forfeited, and I would suggest that's plainly wrong. The government concedes that Mr. McIvory fully preserved the Coraline plan. He objected to imposition of the mandatory minimum. He argued that Harris should be overruled. He said drug quantity is an element. What more is he supposed to do? It's simply untenable to suggest, as the government's argument would require, that he was required to articulate every hypothetical consequence of an eventual favorable Supreme Court ruling on the issue. So your argument is that the constructive amendment claim is implicit in all of those other arguments that you've identified? It's implicit. It's a consequence of the Coraline claim which was preserved. And so this court has never, in its cases on preservation, required sort of an extended exercise in beating of a dead horse, so to speak. There is no constructive amendment claim absent the Coraline claim. The constructive amendment argument follows naturally from the Coraline claim. It's a consequence of drug quantity becoming an element. Counsel, in Harakali, which sort of deals with some of these issues extensively, there's no reference to constructive amendment at all. In other words, the court there did not seem to understand that constructive amendment was implicit, as you would argue in all of these contentions that you now raise. You seem to be saying it's so obviously part of the environment of this claim that anybody would understand that it's there. Harakali seems to belie that. Well, Harakali, for whatever reason, the parties, neither the parties nor the court raised it in Harakali. I mean, it's an interesting question why. I mean, they failed to do it. The court didn't address it. That's the reason why the constructive amendment claim really bypasses Harakali and is an independent ground to reverse. One interesting distinction, which may explain it, is that in Harakali, the indictment was silent as to drug quantity. So it wasn't really a situation where the court was changing the drug quantity, increasing the drug quantity. Rather, it was more akin to sort of filling in a blank. And so in that sense, Harakali is different. And so maybe then it wasn't so obvious because filling in a blank is, in fact, different from changing, increasing a drug quantity that's actually alleged. But that's absolutely counterintuitive. To say that a defendant who has no doubt drug quantity alleged is on better notice of an Alain error than a defendant who's facing an allegation that says five grams or more. The only difference between the indictments is that the indictment here indicates to the defendant that drug quantity is important. Whereas in Harakali, the defendant didn't even get that much. Well, drug quantity is important for crack more so than, well, first of all, this is not really a case, this is not a case about notice. I mean, the issue of the issue in Alain is not just notice. It also isn't a case about constructive amendments. Well, no, but. Excuse me. All right? The only thing that the constructive, there's no amendment of the indictment. The indictment is the indictment. There's an error. Everyone agrees. The government doesn't contest that there's not an Alain error. Everyone agrees that there's an error. The question is the legal effect of that error. You have a series of arguments about the legal effect of that error. Bottom line being whether or not it's harmless. All right? But there's no amendment. The government isn't coming in here and saying, sentence him on a different indictment. This is the same defendant, the same conduct, the same offense states. All right? Where the court has talked about constructive amendments, and I think Judge Howard has written several opinions about this actually, there's no actual requirement that the indictment itself be amended. The language this court has consistently used is that where in effect either the government or the court amends the indictment by, for example, imposing a sentence other than that which the indictment would justify, that is what a constructive amendment is. But the indictment here all along was designed to invoke the mandatory minimum. It's the law change, not that the indictment changed its focus. It's the law change, but the grand jury plays a role here, right? It's not just the notice issue, it's the grand jury issue. And to blithely assume, especially in the crack cocaine environment, that the grand jury necessarily would have done exactly the same thing I think is a misplaced assumption. There are really three players that can determine what kind of sentencing exposure a crack cocaine defendant might have. Just before you get to that, I don't want to leave Judge Salia's point quite yet. One of those cases that you refer to is Icoboni. And what I was thinking in Icoboni, or at least the way I read the case now, is that it was a separate crime that was charged from the one that the judge attempted to tag the forfeiture on, a separate section of the statute. But we don't have that here. So how are the cases alike? Well, I think the consequence of a lien is that drug quantity is an element. And so depending on the drug quantity alleged, there are different levels of offense, different kinds of offense, enhanced forms of the offense. In Icoboni, you had money laundering with two different theories, which are also sort of part of the same statute. No, they're separate. There's A and B. Well, there's A and B. But as in 841, there's ABC, et cetera, which set the different threshold levels for crack cocaine and other drugs at different quantities. Bottom line, the government had well over a year after the passage of the FSA in which it could have gone back to the grand jury if this was really such a slam dunk. It failed to do so. And in that environment, to sort of usurp the grand jury's role here, this really is a case where protecting the grand jury's role is important. Counsel, whose error are we talking about here? Is it the judge's error in imposing the sentence, or is it the grand jury's error in not setting forth in the indictment a drug quantity that would support the mandatory minimum? Whose error is it here? Well, it's the court's error, because the court is faced with a charge. There's a charge. There's an indictment. There's a charge. There's a particular quantity charged. That's the crime that's charged. The law at the time of the sentencing, the defendant's objection was that it's improper to impose a mandatory minimum based on that charged quantity. As a result of Allain, the judge, this is what's changed. The judge is no longer permitted to make that quantity determination. Isn't that correct? Isn't that what Allain means? Certain threshold determinations. Certainly there can be preponderance quantity determinations for the guidelines. That's really a separate question. But for a mandatory minimum under Allain, or for a statutory maximum under Apprendi even before, the judge cannot make that finding. Okay, so how can that be the relevant decision maker for a harmless error analysis? The judge is not permitted to make that quantity determination. That's why it's so peculiar. So I guess your point is, it must be the grand jury. That's the error we're talking about. But to the extent, I mean, the grand jury doesn't make an error. The grand jury charges a crime, charges, finds certain facts to be proven by a preponderance. And so the error is the legal step taken by the judge, imposing a sentence that that indictment does not warrant. Okay. But help me out, and maybe the government can help me out. Sort of the premise of the harmless error analysis is that if the decision maker had before it at least one version of the harmless error analysis, if the decision maker had before it information it should have had, it would have made the right decision. Or alternatively, even if it had before it information it should not have had, even if you excluded that information, it still would have made the same decision. But how does that analysis work here? The notion is that the judge should not be making the decision at all. Isn't that the consequence of Allain? The judge is bound by what the grand jury indicts. And presumably the information about the crime was the same, or would be the same in any event. What the grand jury indicts is a function of its role as a check on executive power and what the executive asks it to indict. But here the government cut the grand jury out of the loop after Congress recalibrated the penalties. So you have three players, the Congress that sets the penalties, the grand jury that chooses what to indict, the prosecutor that chooses what to prosecute. Congress recalibrates, the government takes it upon itself to undo the effect of that, leaving the grand jury out of the picture. That is a clear Fifth Amendment violation I would suggest. I believe my time is up. Thank you. Counsel I wonder if at some point in your argument you would help me with the question that I posed to the opposing counsel. At some point, you don't have to start with that if you don't want to. I'll try. Thank you. I'll start with the constructive amendment argument. It is the government's position that the defendant forfeited this claim. He never once mentioned the term constructive amendment or even invoked the idea of constructive amendment. On appeal, he claims the court should deem him to have preserved the claim because in his view it flows from a lien. And that argument, it's our position, is wrong because the defendant could have made this very same argument even if the Supreme Court had reaffirmed Harris in a lien. That is, at the time of this guilty plea, the defendant could have said the FSA has been enacted, the indictment should have charged 28 or more grams. It doesn't. I am not faced with a 10-year mandatory minimum. And because he didn't make that argument at the time when it was important for him to make the argument, and he could have made it, his claim should be deemed forfeited and subject only to plenary review, which would fail for all the reasons discussed in the government's brief. If we were to disagree with you and take the view that the constructive amendment is implicit in this argument, and hence we're dealing with a preserved constructive amendment claim, what would be the consequence of that for this case? Then there's two consequences. One, the court will have to decide whether there was a constructive amendment, and two, whether, well, three consequences. Two, whether constructive amendments are structural or amenable to harmless error review, and three, if the latter is true, whether the error here was harmless. It is our view, we didn't develop it in our brief because we believe that the claim is so clearly forfeited, but it is our view that there was no constructive amendment in this case. The defendant was charged under A41B1B3 in all three counts of the indictment, and that is precisely the section under which he was ultimately sentenced on counts one and three. If the court finds, however, that there was a constructive amendment, it is our view that these claims are not structural and are subject to harmless error review. If you get to that issue, you will be faced with a number of cases in the circuit in which the law seems to be a little bit in disarray. I would suggest that the court's most comprehensive discussion... Well, excuse me, you say in disarray. I mean, I thought there is law to the point that if we're dealing with a preserved constructive amendment claim, that the harmless error analysis does not apply. In the court's decision in the United States versus Brandeo, which I would suggest is the most comprehensive discussion of preserved constructive amendment claims in the First Circuit, the court points out that although the court has frequently stated that constructive amendment claims that are preserved are, per se, reversible, in fact, that statement often comes up in cases where ultimately the claim was found to be either forfeited and subject to plain error review or not a constructive amendment. So in the United States versus Brandeo, the court pointed out that this issue really has been dicta in almost all cases except, as Judge Howard pointed out, in Ayakabane, which the court in Brandeo tried to wrestle with. And I would suggest that in addition to what the court has suggested this morning, another way of looking at Ayakabane is that the error could not be found to be harmless. And in fact, in the last footnote in the case, the court pointed out that the government hadn't even argued that the sentence, the forfeiture could be supported on a harmless error analysis. In Brandeo, one of the things the court points out is that it's unhelpful to have outcomes dictated by labels such as constructive amendment because the court said there are many different kinds of constructive amendments. Some are prejudicial and some are not. And I would suggest that if the court finds a constructive amendment here and one that's been preserved, it should find that it is not the kind that's prejudicial. And the reason for that, or at least one of the reasons for that, is any other result would create a completely dichotomous result with the court's Aileen decisions. The policies behind Aileen are exactly the same as the policies behind the prohibition on constructive amendment. That the defendant receive notice of the charges, that the defendant be able to plead double jeopardy in a subsequent prosecution, and that the grand jury be able to act against vindictive or overreaching prosecution. And those issues are exactly the same in two situations. It would make no sense to rule that a claim dubbed Aileen claim is amenable to harmless error review, but the almost identical claim dubbed constructive amendment is not. For those reasons, we would ask the court reject both the Aileen claim and the constructive amendment claim. Could you help me counsel with the question that I now pose? Could you repeat the question? Sure. I'm trying to understand, you know, we talk about the applicability of harmless error in this situation. I just want to be sure I understand whose error we are talking about and how harmless error analysis is at all helpful in this situation. I believe it's the error by the judge in imposing the mandatory minimum sentence. Not the grand jury, because in fact, the grand jury isn't presented with multiple. Okay. My problem is, and maybe this is just a basic misperception, and please tell me if that's the case. My understanding is that it's not that the judge made his determination on the basis of imperfect information. It's that the judge made a decision that he's not entitled to make. He no longer can make, the judge can no longer make that quantity determination in the way that judges understood they could before Elaine. I think I do understand. Hopefully I understand the question. And if I understand the question, I think the answer is that the test of harmless error, regardless of whether it's the Sixth Amendment or Fifth Amendment error, is whether a properly instructed jury, grand jury or jury, would have found the quantity if it had been presented to it. So in this case, if this case had gone to trial and a properly instructed jury had been instructed that the alleged quantity was 28 or more grams, a rational jury would have found 28 or more grams. There would have been no other rational result. And you see that analysis in the First Circuit cases that deal with guilty pleas. Morris's one case where a defendant went to trial, that's exactly the analysis that Justice Souter employed. And in fact he rejected, I apologize, but he, Justice Souter rejected the argument that the defendant here, I think, made, that the judge wouldn't have imposed the sentence or the grand jury might have done something else if it had been presented with the choice or the judge would have done something else. That's not, that's Justice Souter described it as a false choice. The test is whether a properly instructed jury or grand jury would have found the quantity. And here, there can be no other conclusion. The evidence was simply overwhelming. The grand jury would have found by the standard probable cause that the second transaction involved 28 or more grams and had the jury presented with that question, it would have reached the same result beyond a reasonable doubt. There's nothing particularly unusual, is there, about a judge deciding an issue that should be left to the jury and us applying harmless error review to that decision? When we do that, for example, when a judge, we've got cases where the judge has presumed to decide a materiality issue as a matter of law, thinking that was the judge's issue, but the Supreme Court then says the materiality is for the jury. But nevertheless, that error can be harmless if it's reasonably clear that the jury would have come out the same way as the judge did. Absolutely. Well, that's right. That's in the context of a jury trial itself. What puzzles me here is that we're dealing with a guilty plea situation. There's no jury at all. So why do we, in a guilty plea situation, invoke what a truly hypothetical jury might have found to establish the proposition that the error was harmless? Why is it relevant that a hypothetical jury, if properly instructed and asked to consider all this evidence, would have made the proper quantity determination? Why does that inform our analysis of whether the error in this guilty plea situation was harmless? You know, standing here, I'm honestly not sure if you go back through all the case law and how that developed, but it's certainly the law in the First Circuit. The First Circuit has said in a number of cases, in guilty plea cases, in Heracli, most recently in Morris, in an unpublished case, Barton, which also rejected a constructive amendment, that in a guilty plea case, harmless error applies as well. And in harmless error, we get to look at the totality of the circumstances, what would have eventuated. This defendant was caught on audio and videotape selling 42.5 grams of crack cocaine to a cooperating witness. And during that deal, he actually said he only had 44, as opposed to the 50 the cooperating witness had ordered. It's completely implausible for the defendant to have returned an indictment charging 28 or more grams if this case had come post-FSA, or that a jury presented with this evidence would have found something different. Thank you. Thank you. So, the grand jury is not merely some scale, an arbiter of facts. It's an entity that makes charging decisions, what crime to charge. And what Aline tells us is that the mandatory minimum is part of the decision of the crime to charge. Whatever the drug quantity was, and there was really no incentive for Mr. McIvory ever to test or challenge it here because the quantity was not driving the guidelines. We had the career offender and the mandatory minimums in play. Whatever the quantity was, however overwhelming the evidence was, the grand jury came back initially with a 5-gram charge. Would they have come back with a 28 gram? Look at it another way. The grand jury came back with a drug quantity amount, which under the law as it existed at the time, was sufficient to trigger the mandatory minimum. But with the recalibration of the law, would it have come back with the new quantity required to trigger the mandatory minimum? That doesn't seem to be the question under our case law. The question seems to be, could any reasonable fact finder have come up with a different conclusion? Except that, well, I think there's a bit of a conflation of run-of-the-mill, sort of mine-run cases where the judge may supplant a jury's role in certain respects, versus the choice of what crime to charge, which is the core of the grand jury's function. But the crime here hasn't changed. The crime has been the same all along. What's changed is the Supreme Court has changed the modality. First of all, Congress changed the law in the Fair Sentencing Act, and then the Supreme Court changed the modality for how you determine the amount. But the crime hasn't changed. It's been the same statute from day one that was charged by the grand jury, and it's been the same conduct from day one of the defendant that's been an issue. Respectfully, I would suggest that Alene says that quantity is now, for mandatory minimum purposes, an element of an enhanced crime, a different crime, a distinct crime. But counsel, even in the jury trial setting, in a case that Celia has referred to, even if a jury is not instructed on an element of the offense, nevertheless, a harmless error analysis applies. And that's really an error of constitutional dimension, but the appropriate harmless error analysis applies. Why should it be any different before a grand jury? Why should- you seem to be saying that the grand jury process, unlike the jury trial itself, should not be subject to a harmless error analysis at all. Why should that be? The grand jury defines and chooses the crime that is actually charged. I mean, I think a more extreme case which would maybe illustrate the mischief that is really at risk here would be the court commonly sees defendants charged with possession of a gun, possession of drugs, but no 924C possession of the gun in furtherance charge. If Mr. McIvory is not entitled to relief for a preserved objection, nothing would stop a prosecutor from asking for or a judge from imposing a five-year on and after 924C penalty where the evidence is quote unquote overwhelming, even where it's not charged. And that is essentially- I mean, the Supreme Court in the lean puts drug quantity as an element on the same footing as any other element of any other crime. And so to deny relief here would really open the door to mischief by judges and prosecutors as to which defendants would have no remedy whatsoever, and I would suggest the Fifth and Sixth Amendments don't permit that. Thank you.